José Santana, Plaintiff and Appellee, *v.* Santiago Blasco, Defendant and Appellant.

No. 11155.   Argued July 8, 1954.—Decided September 12, 1955.

*José R. Fournier, Virgilio Brunet, Luis Miranda Correa* and *José R. Vélez Torres* for appellant.   *Víctor M. Bosch* for appellee.

Mr. Justice Belaval delivered the opinion of the Court.

This is a complaint involving wages accrued and unpaid, wherein by stipulation of the parties the following facts were established: Plaintiff used to work two days a week as chauffeur and four days a week as a laborer on a chicken and pig farm of the defendant; defendant sold the chickens and pigs raised on his farm to several business establishments

and retailers, who in turn were engaged in reselling them.. Plaintiff transported and distributed the chickens and pigs.. Plaintiff alleged, and it was so held by the trial court, that his work was covered by the provisions of Mandatory Decree No. 16 of the Minimum Wage Board of the former Department of Labor, "Fixing Minimum Wages, Maximum Hours of Work, and other Working Conditions for Employees in Wholesale Trade." Defendant alleged that the Mandatory Decree was not applicable to his business, and, on the contrary, that Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254), establishing the working day, and Act No. 289 of April 9, 1946 (Sess. Laws, p. 682), fixing the rest day, were applicable.

██ It is clear to us that the defendant cannot be considered as a merchant in the usual and regular connotation of this term. The three classical branches of economy are agriculture, industry, and trade: the first, which deals with the cultivation of natural fruits; the second, with the manufacture of processed products; the third, with the distribution of the objects of commerce in their natural as well as in their processed form. Each one has its own economic circle and should have diverse estimations founded on the different nature of its traditional work. The first point to be established is the generic classification of the work which produces the wealth within the traditional forms of economy. The second is the nature of such wealth or economic object produced by the work; the third is its individualization within the systems of profit recognized by mercantile speculation. We have deliberately ruled out everything concerning "services" in order to be able to use the classical criterion in its most simple and comprehensive form.

There is no question that an aviculturist is habitually engaged in the work of obtaining natural fruits. Therefore, generically speaking, an aviculturist is a farmer. The economic wealth which he extracts from nature retains its natu-

ral form, it is not processed, and is not susceptible of being considered by itself as an object of trade. That is why § 244 of our Code of Commerce does not regard as commercial the sales made by farmers or cattlemen of the fruit of their crops or heads of cattle. The system of profit to which it is ascribed enjoys the immobility of the factors and the fluctuation of the cycles which are characteristic of the natural fruit.

The criterion which seems to prevail in the scientific regulation of wages is the same. Section 203(f) of the Fair Labor Standards Act of 1938 (52 Stat. 1060) defines agriculture as follows: " 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural comodities in § 15(g) of the Agricultural Marketing Act, as amended), the raising of livestock, bees, furbearing *animals*, or *poultry*, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, *delivery to storage or to market or to carriers for transportation to market.*" 29 U.S.C.A. 15, § 203(f). See, also, R. L. Cohen, *Economía de la Agricultura*, p. 29 (1942 ed. by Fondo de Cultura Económica.) By analogy, see *Maneja* v. *Waialua Agricultural Co., Ltd.*, 349 U. S. 254 (Clark) (1955).

We have scrutinized the Findings of Fact, Opinion, and Mandatory Decree No. 16 which is applicable to wholesale trade in Puerto Rico, prepared by the Minimum Wage Board, and we believe it was not the Board's intention to make a different specialization of tasks from those traditionally sanctioned by long-established economy. The term "wholesale trade" is used in its usual and ordinary sense: "Sale of goods to retailers, to mercantile establishments, or to other wholesalers."

▉ Regarding the most important aspect of this case, which is the transportation of the fowls or animals from defendant's farm to the commercial establishments, it was made clear in the Findings of Fact, Opinion, and Decree above mentioned that such transportation would not be considered as a task incidental or necessary to wholesale trade. Regarding this aspect of the question, the Board stated as follows: "In the bill of exceptions as well as in the testimony offered at the hearing it was alleged that the definition, as worded in the draft of the decree, was too sweeping and could affect *even the manufacturing or agricultural processes of enterprises which dispose of their products in large quantities.* This was not the Board's intention, and in order to avoid such possible interpretation the definition of sales branch of manufacturing enterprise was added. The definition contained in the mandatory decree and which is inserted here *shall comprise all processes* which may be carried out by a wholesale business establishment, *but not those carried out by a person or agricultural or manufacturing entity up to the time of delivery of its products to the merchant* or entity which will sell it." As has been seen, the transportation from the farm to the business establishment is not considered as a part of the wholesale trade but as a part of the agricultural work. It was also made clear that any duality of the industrial and commercial work would require the installation of another subsidiary establishment (branch) for the sale or distribution wholesale of the products of such manufaturing enterprise by the same producer. There is no reason why we should not apply the same rule to a farmer or to an agricultural enterprise.

The judgment appealed from will be reversed and the case remanded to the San Juan Part of the Superior Court of Puerto Rico for decision, based on the application of Act No. 379 of May 15, 1948, and Act No. 289 of April 9, 1946.